2024 IL App (1st) 221936-U

SIXTH DIVISION
February 2, 2024

No. 1-22-1936

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| POTOMAC CONSULTING, INC., | ) | Appeal from the Circuit Court of Cook County Law division |
| Plaintiff-Appellant, | ) | |
| v. | ) | No. 2017 CH 12503 |
| IS CONSTRUCTION, INC., | ) | The Honorable Jerry Esrig, Judge Presiding. |
| Defendant-Appellee. | ) | |

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice C.A. Walker concur in the judgment.

**ORDER**

¶ 1     Held:   The judgment of the circuit court granting full satisfaction of judgment in favor of IS Construction and partial satisfaction of judgment in favor of Potomac is affirmed.

¶ 2                              I. BACKGROUND

¶ 3     This appeal is from an order of satisfaction and partial satisfaction, after setoff, of two money judgments entered by the trial court on February 22, 2021, on claims for breach of a loan agreement and breach of a demolition agreement. We find no error and therefore affirm.

¶ 4     Ivan Stanila is the owner, president, and sole shareholder of IS Construction, Inc. (ISC). Fred Billings is an "officer and employee" and the manager of Potomac Consulting, Inc.

(Potomac). Stanila loaned $25,000 to Potomac, for which Potomac signed an "IOU" note promising to pay back the $25,000 plus interest to Stanila by July 25, 2015. The IOU note was signed by Harvey Joe, Potomac's putative president. Stanila alleged that this loan was never repaid. The second agreement involved Potomac's promise to perform demolition work for ISC at a property located at 8636 South Indiana in Chicago, Illinois for $42,500. Potomac alleged that the work was completed in October 2016, but that ISC refused to pay.

¶ 5    A bench trial was held on both claims. On February 22, 2021, the court granted judgment in the amount of $20,000 in favor of Potomac and against ISC on the contract claim relating to the demolition work. The court also granted judgment in the amount of $25,000 plus interest, for a total judgment of $37,737, in favor of Stanila and against Potomac on Stanila's contract claim for breach of the promissory note. The next day, Stanila assigned all of his rights, interests, and remedies with respect to the judgment to ISC. On February 25, 2021, counsel for ISC sent Potomac's counsel a copy of the assignment and a proposed agreement for release and satisfaction of judgment, which provided that Potomac's $20,000 judgment against ISC would be fully satisfied and released, and that ISC's judgment of $37,737 against Potomac would be partially satisfied in the amount of $20,000 and reduced to $17,737. On March 8, 2021, ISC was advised that Billings refused to sign the proposed agreement for release and satisfaction of judgment on behalf of Potomac.

¶ 6    On March 10, 2021, ISC moved the court to enter an order of satisfaction of judgment, which provided that Potomac's $20,000 judgment against ISC was fully satisfied and released and that ISC's judgment of $37,737 against Potomac was partially satisfied and reduced to $17,737. The next day, Potomac assigned its judgment against ISC to Harvey Joe.

¶ 7    On March 19, 2021, before ISC's motion for satisfaction of judgment could be fully briefed or argued before the court, Potomac appealed the trial court's judgment to this court. On February 4, 2022, a panel of this court affirmed the trial court's judgment, see *Potomac Consulting, Inc. v. IS Construction, LLC,* 2022 IL App (1st) 210315-U, and the mandate issued on March 29, 2022.

¶ 8    On May 3, 2022, as part of a motion to dismiss a separate lawsuit Harvey Joe filed against Stanila, Joe filed an affidavit in which he stated that Billings "placed [his] name on a company called Potomac *** in order for him to be able to operate a business." Harvey averred that he "never operated the company called [Potomac] and ha[s] never been involved with any business it may have done over the years," that he "did not work for the company[,]" that Billings was the one who "handled everything related to the company[,]" and that he "was never in a business partnership with Billings."

¶ 9    On June 7, 2022, ISC filed a section 2-1401 (735 ILCS 5/2-1401) petition, asking the court to invalidate the assignment of the judgment entered in this matter by Potomac to Harvey Joe. ISC claimed that Billings made the assignment to Harvey Joe after ISC filed its motion to enter satisfaction of judgment by way of set-off and that this transfer was made "solely to evade a set-off of its judgment against the judgment of [ISC], in violation of *** the Uniform Fraudulent Transfer[] Act." 740 ILCS 160/6(a). The next day, Potomac moved to dismiss ISC's section 2-1401 petition.

¶ 10    On October 7, 2022, the court "grant[ed] full satisfaction of judgment in favor of [ISC] with respect to Potomac's judgment against [ISC] in the amount of $20,000 in this matter," and it granted "a partial satisfaction of judgment in favor of Potomac in the amount of $20,000 with respect to [ISC's] judgment against Potomac in the amount of $37,737 in this matter[,]" the judgment that Stanila had assigned to ISC on February 23, 2021. It then denied ISC's section 2-

1401 petition and Potomac's motion to dismiss as moot. Potomac filed a motion to reconsider, arguing that the trial court lacked jurisdiction to grant the relief sought, which the trial court denied, stating:

> "The applicable law is thus clear that this Court had jurisdiction to consider whether [ISC] was entitled to a set-off and satisfaction pursuant to its inherent legal and equitable powers concerning the judgment it had entered, and that this jurisdiction continued up to the satisfaction of the judgment for the seven-year period for the execution of the judgment."

The court noted that it has "jurisdiction to consider a set-off and satisfaction of judgment as a supplemental enforcement proceeding under Section 12-183(b)" (735 ILCS 5/12-183(b)) and that it therefore "properly construed and followed the law in ordering a set-off and satisfaction of judgment." The court added that because ISC sent Potomac a proposed release and satisfaction of judgment prior to Potomac's assignment of its judgment against ISC to Harvey Joe, "there was an obligation to sign that satisfaction of judgment under the rules." Potomac timely appealed.

¶ 11                                    II. ANALYSIS

¶ 12    As a threshold matter, ISC argues that the trial court's entry of a setoff and satisfaction of judgment is not a final order under Illinois Supreme Court Rule 301, and that we therefore lack jurisdiction to consider this appeal. However, "[a]n order denying a motion for release of judgment is a final and appealable order." *Otto Baum Company, Inc., v. Süd Family Limited Partnership,* 2020 IL App (3d) 190054, ¶ 16. See also *Kenny v. Kenny Industries, Inc.,* 2012 IL App (1st) 111782, ¶ 3. By that same rationale, the trial court's decision to grant ISC's motion for setoff and full satisfaction of judgment constitutes an appealable final order. Otherwise, there would never be an opportunity to challenge such an order. Although ISC's latter motion was styled as a section 2-1401 petition, it is the substance of the petition that controls and here the petition asked the court

4

to "enter[] a full satisfaction of judgment of Potomac's judgment against IS Construction" and to "enter[] a partial satisfaction of judgment of IS Construction's judgment against Potomac, and reduc[e] the amount of said judgment to $17,737[.]" See *Silverstein v. Brander,* 317 Ill. App. 3d 1000, 1005 (2000) ("the substance of a motion, not its title, determines how the court should treat it."). Accordingly, we find that the trial court's order granting ISC's request for a release of judgment is a final appealable order and that we therefore have jurisdiction to consider this appeal under Illinois Supreme Court Rules 301 and 303. Ill. S. Ct. R. 301 (West 2022); Ill. S. Ct. R. 303 (West 2022).

¶ 13    A. The Trial Court Properly Exercised its Jurisdiction to Grant the Relief Requested

¶ 14    Potomac argues that the trial court "exceeded its jurisdiction in granting the relief requested" because it denied ISC's section 2-1401 petition and "there were no other motions pending before the trial court that would have allowed the trial court" to enter a setoff. However, ISC's motion to enter satisfaction of judgment, which was filed on March 10, 2021, was still pending when the court issued its decision on October 7, 2022. Moreover, the court had jurisdiction to consider a set-off and satisfaction of judgment as a supplemental enforcement proceeding under 735 ILCS 5/12-183(b) (West 2020).

¶ 15    Section 12-183(b) states,

"[i]f the judgment creditor, his or her assigns of record or other legal representative to whom tender has been made of all sums of money due him or her from the judgment debtor including interest, on any judgment entered by a court, willfully fails or refuses, at the request of the judgment debtor or his or her legal representative to execute and deliver to the judgment debtor or his or her legal representative an instrument in writing releasing such judgment, the judgment debtor may petition the court in which such judgment is of

5

record, making tender therewith to the court of all sums due in principal and interest on such judgment, for the use of the judgment creditor, his or her *** administrators or assigns, whereupon the court shall enter an order satisfying the judgment and releasing all liens based on such judgment."

In *Klier v. Siegel*, 200 Ill. App. 3d 121, 124 (1990), the court found it "clear" that "the purpose of a section 12–183 proceeding is to determine whether all sums of money 'really due' from the judgment debtor have in fact been paid and the judgment satisfied." It recognized the "inherent power of a court to make such orders as may be necessary to carry its judgment into effect and render it operative, a power which continues in the court until its judgment is satisfied." *Id.* at 125. See also *Weaver v. Bolton,* 61 Ill. App. 2d 98, 105 (1965) (stating that the court "had authority to make such orders and issue writs as were necessary to carry its judgments into effect and to render them operative"); *Commonwealth of Virginia v. State of West Virginia,* 246 U.S. 565, 591 (1918) ("[t]hat judicial power essentially involves the right to enforce the results of its exertion is elementary").

¶ 16    In this case, on February 22, 2021, the trial court entered (a) judgment in the amount of $20,000 in favor of Potomac and against ISC on the demolition agreement, and (b) judgment in the amount of $37,737, in favor of Stanila and against Potomac on Stanila's claim on the promissory note. Stanila then assigned all of his rights, interests, and remedies in the judgment in his favor and against Potomac to ISC on February 23, 2021. On February 25, 2021, counsel for ISC sent Potomac's counsel a copy of a proposed agreement for release and satisfaction of judgment, which provided that Potomac's $20,000 judgment against ISC would be fully satisfied and released, and that ISC's judgment against Potomac would be reduced to $17,737. It was only after Billings refused to sign the proposed release and satisfaction of judgment that ISC moved the

court to enter a full satisfaction of Potomac's judgment against ISC and to enter partial satisfaction of ISC's judgment against Potomac. Section 12-183(b) states that if a creditor "wil[l]fully fails or refuses, at the request of the judgment debtor" to release a judgment, the judgment debtor "may petition the court" and the court "*shall* enter an order satisfying the judgment and releasing all liens based on such judgment." 735 ILCS 5/12-183(b) (West 2020) (emphasis added). This is exactly what the trial court did here. The court was merely enforcing its February 22, 2021, judgments pursuant to its powers under section 12-183(b) and 12-176 (735 ILCS 5/12-176 (West 2022)) when it authorized a setoff and satisfaction of judgment in favor of ISC, as required by statute. See 735 ILCS 5/12-176 (stating that "[j]udgments between the same parties may be set off, one against another, if required by either party"). Accordingly, we reject Potomac's argument that the trial court lacked jurisdiction to grant a setoff here and find that all of the cases it cites—which relate to child custody and child support payments—do not apply.

¶ 17    B. The Trial Court Properly Exercised its Authority to Set off the Judgments Between the Parties

¶ 18    Next, Potomac argues that the trial court erred when it granted a setoff. The determination of whether a defendant is entitled to a setoff is a question of law and, therefore, subject to *de novo* review. *Thornton v. Garcini,* 237 Ill. 2d 100, 115-16 (2010).

¶ 19    Potomac argues that because the parties "were not in the same capacity," section 12-178 of the code of Civil Procedure "precluded the setoff." Section 12-178 states that set-offs "shall not be allowed *** [w]hen the creditor in one of the judgments is not in the same capacity and trust as the debtor in the other[.]" 735 ILCS 5/12-178(1) (West 2022).

¶ 20    While it is true that Potomac and ISC were not in the same capacity on February 22, 2021, the date of the court's initial judgment, Stanila assigned the judgment in his favor and against

Potomac to ISC on February 23, 2021. Therefore, on February 25, 2021, when counsel for ISC sent Potomac's counsel a copy of the assignment and a proposed release and satisfaction of judgment, the parties stood in the same capacity. See *Matter of Estate of Martinek*, 140 Ill. App. 3d 621, 629-30 (1986) ("by acquiring the same rights as the assignor, [the assignee] stands in the shoes of the assignor"). The parties also stood in the same capacity on March 10, 2021, the date ISC moved the court for satisfaction of judgment after Fred Billings, Potomac's manager, refused to sign the proposed agreement for release and satisfaction of judgment on behalf of Potomac. Compare with *Alexander v. Clarkson*, 100 Kan. 294, 296 (1917) (finding that a setoff between Alexander and Clarkson was improper because the bank's assignment of its judgment against Clarkson to Alexander and Alexander's motion to set off this judgment against Clarkson's judgment against him arose after Clarkson had already assigned his judgment against Alexander to a third party). We find nothing in the text of section 12-178(1) excepting from set off judgments where mutuality of obligation was established by assignment of judgment. Indeed, section 12-178(2) expressly contemplates that a judgment may be assigned. 735 ILCS 5/12-178(2) (West 2022) (set off is not permitted "[w]hen the sum due on the first judgment was lawfully and in good faith assigned to another person, before the creditor in the second judgment became entitled to the sum due thereon.") Therefore, because mutuality of obligation existed between Potomac and ISC at the time ISC requested a setoff and release of judgment, ISC was entitled to a setoff and release of judgment under sections 12-176 and 12-183(b), respectively. 735 ILCS 5/12-176 (West 2020); 735 ILCS 5/12-183(b) (West 2020). See also *Peoples v Carborundum Co.*, 123 Ill. App. 3d 39, 42 (1984) ("in the case of a willful failure or refusal to release the judgment, the court *shall* enter an order doing so at the request of the debtor") (emphasis in original). Any assignment to Harvey Joe, whether valid or not, occurred after ISC's request for a setoff and release of judgment and therefore

it was subject to ISC's setoff request. See *Christiansen v. Saylor,* 297 Ill. App. 3d 719, 724 (1998) ("An action by an assignee of a judgment is generally subject to any defense or set-off existing before the assignment of the judgment.") (citing 735 ILCS 5/2-403 (West 2020)).

¶ 21    Several of the cases cited by Potomac are distinguishable because no mutuality of obligation existed between the parties. See, e.g., *Brown v. Farkas,* 158 Ill. App. 3d 772, 781 (1986) (finding that the trial court's set off was improper, because Sanford and Gloria Brown's judgment was against Farkas, whereas Farkas' judgment was solely against Sanford Brown, making the set off "inequitable" to Gloria); *LB Steel, LLC v. Carlo Steel Corporation*, 2018 IL App (1st) 153501, ¶ 46 (finding the trial court erred when it set-off judgment in favor of subcontractor and against third party testing company that subcontractor contracted with against judgment entered in the general contractor's favor against the subcontractor, because there "there was no mutuality as to the parties involved in the judgments at issue").

¶ 22    In *Kenny v. Kenny Industries, Inc.,* the court similarly found a setoff impermissible because "no mutuality of obligation exist[ed] between the parties" where the creditor of one judgment was a shareholder's trust while the debtor in the other was the shareholder individually. 2012 IL App (1st) 111782, ¶ 21. After Kenny Industries terminated the employment of Gerard Kenny, one of its shareholders, it was obligated under the terms of a share purchase agreement (SPA) to buy back his shares, which were held in a trust. *Id.* ¶ 6. Kenny Industries valued Gerard's shares at approximately $5.4 million, but argued that it was entitled to a setoff based on a provision of the SPA that stated that if a shareholder was "indebted to any member of the Kenny Group, then [Kenny Industries], in its discretion, [could] withhold any payment, in whole or in part, and apply such withheld amount to the payment or partial payment of such indebtedness." *Id*. at ¶ 5. Kenny Industries informed the trust it intended to exercise its right to set off a $7.6 million debt it claimed

9

Gerard owed under a contribution agreement between Gerard and his siblings and, as a result, Kenny Industries was not obligated to pay the trust anything for Gerard's shares. *Id.* The trust initiated arbitration proceedings to dispute Kenny Industries' exercise of the setoff option, and the arbitrator ruled that Kenny Industries had no right to exercise the setoff option because the debt Gerard owed under the contribution agreement was to his siblings individually, who were not members of the Kenny Group. *Id.* ¶ 7. Afterwards, the Kenny siblings obtained a judgment against Gerard personally for more than $7 million. *Id.* ¶ 10. The siblings then assigned this judgment to Kenny Industries. *Id.* Kenny Industries subsequently filed a motion for release of judgment, claiming it satisfied the trust judgment by setting off the amount it owed the trust against the judgment in favor of the Kenny siblings and against Gerard, which was assigned to Kenny Industries. *Id.* After the trial court denied its motion, Kenny Industries appealed. *Id.* ¶ 13. The court found that Kenny Industries was "not allowed to exercise its right of setoff in this case because no mutuality of obligation exist[ed] between the parties" because "[t]he creditor of [one] judgment is Gerard's trust while the debtor in the [other] judgment is Gerard Kenny individually." *Id.* ¶ 21.

¶ 23     Potomac alternatively argues that a setoff was improper here based on Stanila's assignment of his judgment to ISC. Potomac does not argue that Stanila's assignment of his judgment against Potomac to ISC was invalid, but instead contends that Stanila's assignment of his judgment to ISC "was ineffective for purpose of a setoff in that it was only for the purposes of collection." An "assignment for collection" is a type of "*partial* assignment" where the creditor "assigns legal title in the debt to [a] collection agent but retains equitable title for himself." *Unifund CCR Partners v. Shah*, 2013 IL App (1st) 113658, ¶ 5 (emphasis added). Here, by contrast, Stanila assigned "all of the rights, interests, and remedies he possesses with respect to the Judgment" against Potomac to ISC. Under the terms of the assignment, ISC "acquire[d] all of Assignor's rights, interests, and

10

remedies in the Judgment, including the right to take any action to enforce or collect the Judgment and retain any amount collected, or to compromise and settle the Judgment upon any terms to which Assignee may agree." Thus, once Stanila transferred all of his rights and interest in his judgment to ISC, retaining no equitable title, ISC "st[ood] in [his] shoes[,]" *PRA III, LLC v. Hund,* 364 Ill. App. 3d 378, 382 (2006)), and it was entitled to all rights and remedies, including statutory set off and release rights under the law. See, *e.g., Norman v. Berney*, 235 Cal. App. 2d 424, 430, 434 (Cal. Ct. App. 1965) (finding "no reason why" a setoff should not be granted where an assignee acquired a judgment from its beneficial owner, reasoning that "[w]hen a debtor recovers a money judgment against his creditor or acquires a third person's judgment or any other claim against that creditor, the debtor may use the claim as an offset, satisfying in whole or in part the judgment his creditor has against him"). Compare with *Kenny Industries,* 2012 IL App (1st) 111782, ¶ 21 (because the assignment of debt by the Kenny siblings was merely "for purposes of collection[,]" it did not "transfer beneficial ownership to the assignee as required to take a setoff.").

¶ 24                                    III. CONCLUSION

¶ 25    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 26    Affirmed.